I'm Andrew Levitown. I represent David Miller. I don't understand what happened in this case and why it happened. You really have to understand David Miller's wife's case a little bit. His wife was named Lynn Wallace. She pled guilty to conspiring with David Miller to defraud his former employer, which is called Skylink. She also admitted in other crimes evidence that she had embezzled money from the State Center of SAS Law and from the CCAID, which was a not-for-profit type entity. Where are these facts going? Which issue are you pointing these facts as helpful to understanding? Sure. Ms. Joiner issue and the Fifth Amendment issue. So you have to understand sort of where this came from in order to understand that. Because in the aftermath of her case, what happened was... When you say the Fifth Amendment issue, you're getting at the question of her testimony at the trial not being allowed. Correct, Your Honor. The government said... You wanted to call her as a witness, as a defense witness. That's correct. Okay. And the judge? The government stated that her testimony would not be material even if the jury believed he was not guilty of the SAS Law offense and the CCCAID offense. Because the government had put all three offenses together in one count as a conspiracy. And the government objected to her testimony? Yeah, the government... And her lawyer objected to her testimony? Yeah, the government asked the court for blanket immunity. In other words, she sought blanket immunity. The government went to the court and said... The government asked for blanket immunity? Yeah. What are you talking about? What about blanket immunity? Where did that come from? When Lynn Wallace was compelled to testify by David Miller, she sought... You wanted to call her as a witness, correct? Correct, Your Honor. Did you subpoena her? Yes, she was actually in the court. Was she subpoenaed? I think what happened there, I was not the trial lawyer, but my recollection of what happened there was the court brought her to the courthouse and the defense counsel had not subpoenaed her properly. Was she in custody? Yes. She was in custody. Well, you couldn't have subpoenaed her. You needed to get a writ, maybe a corpus autist, a condom. What difference was it going to make if she invoked a spousal testimony privilege? We're not just talking Fifth Amendment. Yeah, the... So how are you going to get around that? She didn't have to testify. Well, there's a couple of things. Number one was there's an exception to the spousal immunity of a testimonial privilege. If she's in joint participation in the crimes, even if she's not charged, that's Fourth Amendment law. The other thing is the court... If she is in joint participation with the crime, what? If she's a joint participant in the crime, then there's an exception to spousal immunity. Is that like the crime fraud exception for attorney-client privilege or something? Similar. Similar to that? So there's a loophole for their spousal immunity if the spouses are involved in a conspiracy like this? Yes, Your Honor. So that's what... Did you brief that point here? I didn't brief that point, Your Honor, and the reason I didn't was because the court... How many... Your clients had several lawyers during the course of this thing. Correct. Correct? Did you write the brief? You just told us you didn't try the case. I did write the brief. You wrote the brief, but you didn't try the case. Correct. Okay. So she was in custody. She was available to testify. The government objected. Her lawyer objected. You wanted her to testify. Correct. And the judge sustained the objections. Right. And that's your primary issue on appeal. Is that right? One of the issues. Well, how about a primary issue on appeal is that you were not permitted to call a witness... Right. ...who would have helped your client. Although the stipulation at her guilty plea implicated your client. That's incorrect. The government states that over and over again. It's stated in court. If you look at the amended information, if you look at the plea, if you look at the statement of facts supporting her plea, the government's absolutely wrong about that. It's a matter of... It's a factual matter. When the government states that she implicated David Miller in the SAS law offense, the CCCAID offense, and they didn't even mention, but I suppose it would have to be also the money laundering conspiracy, that's not accurate. In fact, they amended her information specifically because of that. It states that she only implicated David Miller on the conspiracy on the Skyland fraud. So you responded to me there was an exception. I'm just trying to... I'll check it and be sure you know this better than me. You've studied this to that degree. But isn't there such a thing called a marital privilege? And there's a difference between a marital privilege and what was asserted here was a spousal testimonial privilege. There's two types of privilege. They're both called marital or spousal. We're not talking marital privilege here. We're talking spousal testimonial privilege. It's spousal testimonial privilege, but... And you have to be a spouse. There's a case on that out of the Fourth Circuit where a woman wasn't really a spouse, and they said you have to be a spouse. So you could probably call it marital privilege as well. I think I have that case. It's U.S. v. Parker, Fourth Circuit, 1987. I don't have the cite with me. I wish I did. I probably have it in some other papers. But that's the case. It says the testimonial privilege is an exception to the testimonial privilege for joint participations in crime, whether they're co-defendants or not. I'll also say this, Your Honor. On the court docket itself, the trial court said that it decided this issue on the Fifth Amendment grounds. It said that in court. But later, after David Miller filed some motions for a new trial, after he filed his motion for reconsideration, which is Doctrine 184, after that the court said, oh, let me talk about spousal privilege. So the court did cover it, but that wasn't really the basis of the decision. What did you say the basis was, the Fifth Amendment? The Fifth Amendment. So what was your proffer as to how her testimony was going to help your client? Did you proffer that as to what she's going to testify? She's going to testify. So she's in the crime with him. So, I mean, presumably she's not going to help him at all if she's in with him. But you have a proffer because you say, did you make a proffer to the court as to what she's going to testify to? That's why I want to start with Lynn Wallace's case to explain that a little bit. But I'll tell you what happened here. She had pled guilty four years before this case. Was that your proffer that you're going to ask to what her case? When you said it to the district court, you said, I'll tell you what she did and how she did it. Or did you say, she will say this? Your Honor, there was no proffer in this case. I don't think it's required by the rules of procedure. You don't have to tell the court how her testimony would help you. Not if the court already knows it. The court has been dealing with this. You can assume that, you say. Well, you can see from the testimony. That she's going to help him on that stand. Was her guilty plea before the same judge? Yes. And the entire thing was discussed by the court. So the court knew exactly what she was going to testify to. It was a long discussion with her defense counsel. It was a long discussion in court with the government's counsel. Everybody knew what she was going to testify to. She was going to testify that her husband was involved in Skylink. He was not involved in anything else. He didn't know about it. And she's going to tell the court why. But she pled guilty to the conspiracy with Miller to defraud all three of them. Skylink, the Courtship, and others. She pled guilty to that. No, she didn't. She pled guilty to Skylink. She said in her other crimes evidence that she admitted. She stated she committed these crimes. She did not say that David Miller did. So she didn't plead guilty to the conspiracy. She pled guilty to the conspiracy. But only as to just one. Right. Skylink. Only Skylink. They amended the indictments for the information so that they clarified that point. Well, that's what I was speaking to, the amended information. And you say she didn't plead guilty to that. The amended information did include all three, didn't it? No. The amended information. Just the one that you say it did. And it listed other crimes. And it separated into two parts. Here's the conspiracy part. Here's the other crimes evidence piece. Non-conspiracy. It's very clear. The government says it's not. But, you know, this is a de novo review on this issue. And you guys should take a look at it. I think we've laid it out pretty well in the briefs. Are you both, were both of them lawyers? Your client's a lawyer. He's a lawyer. His wife is not. She's an accountant. His wife's not a lawyer. Right. Well, but according to the briefs, they formed a law firm. That's not right. They formed law practices. How did they form law practices if she wasn't a lawyer? You'll have to ask the government. Well, I thought you filed a brief, too. The way I read it, you both were saying that they had these law firms. I don't think so. But you're saying she's not a lawyer. He is. Correct. Now, to get back to the. Well, he was. I don't know if he's still is. Now, to get back to this Ms. Joinder issue for a second, Ms. Joinder also affected. Ms. Joinder? Ms. Joinder. Ms. Joinder. Of count one, Your Honor. You're talking about Ms. Joinder of counts? In count one. You're saying it's duplicitous. Correct. In count one. That's different than Ms. Joinder. The government did, Your Honor, was it took three counts that were not related and put it into one count. Okay. So they put three counts into one count. That's what you're saying. Three charges. Did you preserve that claim? Different crimes. Did you preserve that? Yes. You raised that issue with the district court? It was raised not only in a bill of particulars that were filed on that very issue and a motion to strike by Bill Cowden and Steve Webster. Did you move to dismiss that count on the count of duplicity? They moved to strike it, Your Honor. And then in David Miller's motion for reconsideration. Did you move to dismiss it? No. In his motion for reconsideration, he raised it as well. As to this particularized inquiry, is it your view that that inquiry should have been done question by question or can it be if she asserts the Fifth Amendment privilege? That is one of the largest issues. The scope of the privilege was unnecessarily broad. It was based on facts that were not accurate. Now, we clearly asked her about SAS law, CCAID and money laundering. We've clearly asked her about all kinds of things. But the court ruled for a blanket Fifth Amendment privilege. That's certainly one of the larger issues. Now, we review that question de novo or abuse of discretion? Well, it's a de novo review. It's a constitutional issue. I thought evidence admissibility was abuse of discretion. I'm sorry, Your Honor? Admissibility of evidence we review for abuse of discretion. I think you could unless it touches on a constitutional substantive right like a Fifth Amendment right. What constitutional privilege are you talking about? Fifth Amendment. Fifth Amendment. His Sixth Amendment right, her Fifth Amendment right. Did you raise a Sixth Amendment right below about not allowing a Sixth Amendment challenge for not letting Wallace testify? Your Honor, I think it was in his amended new trial motion. The court said it was late, but the court then issued an opinion relating to it. I didn't see in the record that the Sixth Amendment right was raised. Are you sure? It was in these new trial motions, Your Honor. And I didn't see them until I was preparing for this either, quite frankly. But there was three of them filed by David Miller, not really by his attorney. The first one was a motion for new trial. My recollection is it was one— That's after the fact. That's correct, Your Honor. After the fact is certainly still before the trial court. And that's sort of the issue. And then it was raised— So you say making a motion for a new trial preserves an issue of an evidentiary fact that occurred during the trial that you did not object to? Let me— When you come back, I'd like to hear the case you have that supports that. Let me think about that testimony at trial and what Drew Hutchinson did during the case, because he was wishy-washy, to say the least. Who's Drew Hutchinson? Drew Hutchinson was the CJA lawyer that was appointed— Oh, I was his lawyer. Yeah, well, I'm not so sure that I'm not trying to help you here, but that's like my making an observation. If you try to—if you won't call a witness and the judge keeps it out, why doesn't that preserve your point? I think you're right, Your Honor. Well, but that's the way I always tried to do. Well, I appreciate the help. I don't know whether you have to raise it afterward or not, but they're saying you didn't raise it properly, you didn't preserve it. But I don't know whether it makes any difference or not. It may be abuse of discretion review anyway. But let's see what the government has to say. You saved some time. Ms. Bateman? Thank you. Good morning, Your Honors, and may it please the Court. Samantha Bateman for the United States. This Court should affirm all of Defendant Miller's convictions because as the Court recognized when denying his repeated motions for bond, none of his challenges to those convictions succeeds. The vast majority of Mr. Miller's arguments on appeal, including the Sixth Amendment compulsory process claim, were forfeited by not being— How was the Sixth Amendment claim forfeited? He wanted to call the witness. He didn't make any argument based on the Sixth Amendment. He wanted to call his witness. He says, I'm going to call my wife as a witness and the judge and the government objected. His—her lawyer objected, and the Court sustained the objection. To be clear, the government— What else can he do? He wants to call his witness, and the objection's sustained. He has offered to call a witness. I think he has preserved that. I understand he wanted to call— You may have an argument about whether the judge was right or not, but I don't think—I don't know how you say waived her testimony. He tried to call her. But to be clear, if he wanted to call her and make an argument that he was denied his compulsory process rights, he would have had to make, as Judge Wynn asked, some kind of— Were you all—all the lawyers in the courtroom had taken constitutional law and they knew the Sixth Amendment gives a criminal defendant the right to call witnesses. And he—and the judge says, whoever the lawyer was, Mr. So-and-so, call your witnesses. Yes, sir, I called my wife. Objection. Objection sustained. To be— That's preserved. I understand he wanted to call the witness. He didn't make any proffer, though, which he was required to do. Well, is there something in the Constitution about a proffer? No. This Court's— It says you—says you can call witnesses. You're entitled to defend yourself. Well, this Court's cases say that in order to find a violation of the Sixth Amendment— and the Supreme Court said this in Valenzuela-Burnell as well— the defendant bears the burden of showing that the testimony is material and vital to his defense. So he—it was incumbent on him to say something about what she would have said on the stand. We can't engage in speculation at this point as to what she would have testified to, particularly— The judge had taken—and the government had prosecuted her, and the government had taken her plea. You all knew everything about whatever it was that she knew. I assumed you'd interviewed her and all that kind of stuff, too. And she was a cooperating person, probably, with the government. We didn't call her as a cooperator. What we knew is she had been interviewed. You didn't call her. You objected to her testimony. To be clear, we did not— And he said, I think she'll help me. I think she'll help me. He wanted to call her. Actually, his counsel said at Joint Appendix 1352-53 that he agreed she wouldn't help him. And the government didn't object to her testimony. She invoked, through her counsel— So that's the point I want to be clear on. Did the government actually object to her testimony? Because it looks to me like it was her attorneys who told the court she would not testify. That's absolutely right. Then the court— So the government didn't object. No, we had no position— Okay, I thought you had just admitted it. He said the government objected. This was a few minutes ago. I thought when I asked you that you agreed with that. But now you're saying you don't. Okay. It's not correct that we objected. We explained to the court that she was invoking, as her counsel had told the court, her spousal testimonial privilege. Well, did you want her to testify or not? It made really no difference. So you didn't take a position? We were prepared to cross-examine her if she testified. Did you? We just answered the court's question so that the court could understand why she was— Did the court ever ask you what your position was and whether she should testify or not? I don't believe so because that really wasn't the government's call to make. Okay. The only objection was presented by her own lawyer. Correct. Who, on the face of it, had a valid issue to raise, or two issues to raise. Right. And either one of those would be independently sufficient. You didn't object to his interposing objections? No. And I don't believe the defendant— Were you the trial lawyer? I was, Your Honor. Okay. So you were there. So we got somebody that was there. That's good. Yeah. Yes. And it was her lawyers from the Federal Public Defender's Office who represented her during her plea. And they came in before—we never had a chance to speak with her. We never interviewed her at the prison while she was there. They came in and said she wanted to invoke not just her fifth anemone privilege, but also the spousal testimonial privilege. What about the exception to that? Is there an exception to that? No. My understanding is the exception is for— What do you mean, no? The opposing counsel said there's an exception to spousal testimonial privileges, just like marital privileges. There may be an exception— So somebody has to be wrong on that. There's either an exception or not. Are you telling me there's no exception to it? For the spousal testimonial privilege, that's one that's vested in the testifying spouse. And it wouldn't make sense for there to be an exception to that. Certainly for the marital communications privilege, those are the communications. And if they were during the marriage but in furtherance of a crime or fraud, there certainly is an exception that that evidence can be presented. Maybe he can give us a case law when he comes back to cite where he finds there's an exception to a spousal testimonial privilege here. Tell me, what did she plead guilty to? I understand that the court should have known she'd been helpful, even if there's no profit. The best thing is the court should have known, be helpful, to say that he had nothing to do with the consortium and SAS law frauds. Did she plead guilty to any conspiracy that would involve those entities? Yes. So her— What do you mean, yes? He said no. Did you not hear the counsel on both sides? She said no. He did not do that. It was only one way. So tell me why you say yes. The amended information to which she pled guilty is at Supplemental Appendix 3413-14. And it alleged all of the conduct in violation of the conspiracy count 1349. All of the conduct included, not just SkyLink, but also the frauds on the consortium's donors and Senator SAS law. She was silent as to what exactly her husband knew when and whether he participated, what exactly his role was, because frankly, we did interview her, and her testimony on that was inconsistent. I thought you said you didn't interview her. We didn't interview her while she was at the jail in the courthouse being held awaiting testimony. She made progress. You interviewed her after she pled guilty. Both before and after. Before and after. So you all had talked to her ad nauseum, I suppose, about all this. Right. And one of the reasons we didn't call her was because she told different stories every time she was interviewed. So, for example— Well, the juries can figure that out. You can't say a witness is not allowed to get on the witness stand because they've told different stories. I mean, the government calls people all the time and told different stories. The juries figure out what the truth is and what it's not. And if they tell conflicting stories, the lawyers impeach them with the stories. That's true. I don't know. That doesn't help his argument that he's going to tell different stories. Her concern was that she might be prosecuted for having told those different stories. Well, she may have had a valid concern with that, and her lawyer could raise that. And that is why— Whether he'd be prosecuted or not, but the fact she'd tell different stories is not— I don't think that's a ground to let somebody keep somebody off the witness stand. It is when the— In a criminal trial, where there is a Sixth Amendment right, and everybody in the courtroom knows there's a Sixth Amendment right for a defendant to defend himself. And a lawyer has to defend himself. A competent lawyer, effective in the sense of the counsel, can call witnesses. It's in the Sixth Amendment, right? That's correct. It would have to be counterbalanced against both her Fifth Amendment privilege against— But the primary interest at the trial is the interest of the defendant in the defense. Well, this court's cases under the Sixth Amendment say that you can't compel a witness to testify if they have a valid implication of privilege. And there were two of them here. The district court did also rule— Judge Wynne asked some questions about the spousal testimonial privilege. The cites for that are Joint Appendix 1463, 1655-57, and 1722-23. So the court, both orally and in writing, made a ruling on the spousal testimonial privilege. And that alone was enough to keep her off the stand here. We reviewed that for abuse—that ruling for de novo or abuse of discretion. We'd submit it's actually a plain error because he didn't raise the Sixth Amendment compulsory process. Because he didn't say Sixth Amendment. Assume that he did preserve it by trying to call her. Is it reviewed de novo or for abuse of discretion? We would submit abuse of discretion. I don't think this court has actually decided what the standard is for a preserved claim. Our argument is that it was not— We've got cases going both ways, maybe. I don't believe the court has passed on that question. I think Your Honor hit the nail on the head earlier, though, by saying that it's really an evidentiary question. Well, it is an evidentiary question, but it's a constitutional question, too. And you know that, and I know that, and everybody in the courtroom knew it. Right, and here I think the district court was faced with countervailing constitutional interests. Are you ever heard of the old Rhimes case? Yes, Your Honor. I mean, that went in bank over an issue of whether a defense lawyer could call a witness. My understanding of that case— Do you remember that? My recollection of that case, Your Honor, was certainly no better, but it was a slightly different situation where they kept the defense witness off the stand because there had been some kind of misconduct or the defense witness wasn't supposed to talk about certain things with counsel and that had been violated. So it's sort of a different situation. It didn't involve there an invocation of any privilege, and that's what we had here, an invocation of the spousal testimonial privilege because the thrust of her testimony— But they kept the witness off the witness stand in the Rhimes case. That's correct. And the conviction was reversed, and he got a new trial as a result of the witness being excluded from the in-bank court in the year 2000 or 1999. Is that right or not? I believe that's correct. I would just point out that it didn't involve any invocations of privilege. The witness here wasn't kept off the stand willy-nilly. It involved the Sixth Amendment. Yes, it involved— It involved the Sixth Amendment, the right of a defendant to put on a defense and call a witness. And he was— To get back to— And we said he was deprived of that. Right. To get back to—for him to make out a claim that he was deprived of that, he has to show that the testimony was material and vital to his defense. Did the district court conduct a particularized inquiry about the scope of Wallace's Fifth Amendment privilege? Yes, there was an extensive colloquy with Mrs. Wallace Miller's counsel. But again, because the defendant didn't make any proffer as to what her testimony would have been, nobody had a target to shoot at. And so I do think this court could also look at— where the court sustained keeping the witness off the stand based on a blanket invocation of privilege, where the defendant had made no proffer, and so the court said there was no need to make any more searching inquiry. And that's what we had here, is the district court had no idea what her testimony was going to be. It had changed throughout the time that she had been interviewed and making proffers with the government. And the defendant never said anything about what she would have actually testified to. So, is that inquiry required? The court is supposed to make some kind of inquiry, yes, into whether there are subjects that the witness can and cannot testify about. That's what happened here. How do you get a—I've litigated some of this on both sides over the years, and it's always been a question of what kind of a proffer or questions you can ask when there's a Fifth Amendment assertion made, and the client is getting legal advice, don't testify. It can be a violation of the Fifth Amendment to tell the court what the client would say. It can be a violation of the attorney-client privilege for the lawyer to tell the court or proffer to the court what the client might say. It's a tight situation in those things. I agree. A lawyer tells the client, advises the client, supposedly knowing what the client is going to testify to, she's got to take the Fifth Amendment. She can't testify. How far can a trial court or even the lawyer go in telling the trial court what kind of information supports that? I've advised her to take the Fifth Amendment. She can't testify. She's going to get herself in trouble. Right. That's what happened here. And that's almost the end of the deal, I think. That's right, and that's all really the district court— No, that's what—I think it's a situation that's tough for everybody concerned. I think it is a delicate dance and a delicate balance here, and the district court ably navigated that by asking questions over counseling. You had a great judge, an experienced judge. You've been through a lot of these things. At some point in time in the interrogation by the United States, she either denied involvement herself in certain aspects of the case or she admitted them. And so in any event, if she were to get on the stand, she's got herself in jeopardy. I think that's right. She'd be in quite a quandary because if she testified, for example, that her husband had no idea about defrauding the consortium donors, the community colleges, she had made statements before that she talked to her husband about it, and they jointly agreed it was okay to take money out of that account because it belonged to them. And what she has said, either admission or non-admission, is across the board as to all the entities that were defrauded. Eventually she pled guilty to defrauding all of those entities, but her statements to the FBI both before and after her plea often contradicted what the defendant claimed. But she pled guilty to an information that had all three of them in the conjunctive. That's correct. And the very last line of the information was all in violation of 18 U.S.C. 1349, which she can't conspire with herself, so by definition she was conspiring. And 1349 is the conspiracy statute. That's correct, Your Honor. So we'd submit that this court can affirm, based on either her invocation of the Fifth Amendment privilege because she would have put herself into that quandary of having to either contradict her plea agreement or contradict one of her sworn statements to the FBI. There was also that issue about him wanting to accuse her of a new crime, forging his signature on some mortgage documents, and that wasn't contained in her plea. I don't like to be repetitive, but I want to make sure I understand. That is to all the crimes in terms of her statements. She pled guilty to all of them. She pled guilty to all of them. And she made statements prior to her plea that differ from what her plea was. That's correct. And so if she got on the stand and said her husband didn't know anything about this, that would be a lie. She could be prosecuted for the false statements before or for perjury, yes. One of those statements would have had to have been a lie. And that's because of the way the government charged this case, which I hate. Instead of charging the substantive offenses, you charge conspiracy. So that's what put her in the jam. I think it's really based on the defendant and his wife's conduct. It was all interrelated. It was one crime. It wasn't multiple crimes she pled to in that conspiracy count. It was a conspiracy offense, singular. Correct. With multiple objects. Yes, the mail and wire fraud with the separate objects. And different victims. And the different victims were sort of the manner in need. But it was one offense. That's correct. And she was into it with him. Correct. With her husband. Correct. And that's what he was charged with. That's the crux of the whole thing. That's right. And that's what he was charged with as well. I know now he's raising what is a duplicity argument. I want to be very clear. That wasn't raised below in the Bill of Particulars or anywhere else. And if you look at Joint Appendix 95, he disclaimed making any duplicity claim. His trial counsel said, quote, this is really just a... You're saying duplicity was not preserved. It was waived. He said, quote, this is really just... You're saying it's not preserved. Actually, we're saying something even more than that, which is that... I know you are trying to. I'm trying to... At a minimum, it was not preserved.  And at District Court Docket 72, the court said he wasn't contesting the decision to charge Count 1 in a single conspiracy. So it's not just that he didn't think about it and didn't preserve the argument. He actually affirmatively disclaimed that argument. So we don't think this court should even reach it at this point. But to the extent the court is interested in that argument about the duplicity of Count 1, there's a wealth of authorities in this court. The Tohatchio case comes to mind and others where anytime there are an overlap of the main actors, methods, and goals, that's a single conspiracy. And that's what we had here. There were two co-defendants. They were operating over the same time period, defrauding multiple victims. Was this duplicity as opposed to multiplicity? He's arguing duplicity. I'm sure if he had been charged in three separate conspiracy counts, he'd be up here arguing multiplicity. And that's why this court... One of them's bad and one of them's not. Duplicity is the one that he needs to be arguing, I think. That's the one that he's arguing? Yeah, but that's the one he needs to be arguing. Multiplicity would leave much question about validity of that. Right, but this court has said in Robinson that multiplicity and duplicity are sort of a scala in correctness. And duplicity can violate the due process clause. That's correct. That's what the defect is. It violates the Fifth Amendment. Right. Charge multiple offenses. You'd get it all messed up. And I also would like to emphasize in my remaining time that even if this court found that he was only responsible for the SkyLink portion of the fraud, that was enough to sustain the conviction under Count 1. That is enough to establish the mail-and-wire fraud conspiracy. And then also the fraud proceeds were laundered and spent often in increments exceeding $10,000. So that was enough to affirm Count 2, the money laundering conspiracy. Counts 3 through 10 are all substantive executions of the SkyLink scheme, which Mr. Miller tried to deny to some extent at trial but now effectively admits having committed those crimes on appeal. So on any of those bases, this court could affirm his convictions on Count 1 through 10 simply on the basis of the SkyLink conduct that he has now admitted he engaged in. Thank you, Your Honors. Thank you, Ms. Braden. Mr. Levitin? Your Honor, the government says it didn't object to Ms. Wallace testifying. But what the government told her is that if she testified, it was the government's position that she would be subjecting herself to perjury. It based this on this misstatement as to the plea. The misstatement as to the plea is she pled to one conspiracy. You're saying the government did object to her testimony and said if she testifies, she's going to be prosecuted for perjury? Correct. They also came up with a tangential issue having to do with some bank fraud and said even if the defense counsel didn't bring it up, they'd bring it up on cross-examination. So the government very clearly did not want her to testify. Now, with the court and counsel, her defense counsel, J1463-64, clearly talks about these issues as to what she would testify to. Why didn't the government want her to testify? What was she going to say? She was going to say three things. She wasn't involved in SAS law and didn't know anything about it. Same thing with the CCCAID and that she hid all this money laundering activity from her. And that she not only hid it, she also lied to her about it. So that's what she was going to say. So your client did admit to a conspiracy in so far as scouting. He did. Using the fake entities that he created. Correct. And were these the same fake entities that were used to funnel funds stolen from consortium and SAS law? There was no fake entities used to funnel funds in SAS law and CCCAID. So you're saying that those fake entities were not the ones, the fake entities that were the subject for his pleading guilty to, or at least admitted to conspiring to defraud Skylink, were not the fake entities that were involved with Skylink, with consortium and SAS law? Let me clarify what I'm trying to say, Your Honor. In the SAS law and CCCAID situations, those entities, bank accounts were involved in that. She sent checks or wires to those bank accounts. Didn't he help her get those positions with those entities? He didn't help her? Senator Saslaw testified in the stand. He said that his former treasurer had gotten ill and she had recommended Lynn Wallace. Now, Senator Saslaw did know David Miller. But the government has said over and over again that he got her that position. I also want to point out a couple of other things that I think are really egregious in terms of what the government has been saying and the courts have been saying over and over again. It starts with these Jamaica flights. They keep saying that Lynn Wallace was engaged in conspicuous spending after David Miller was fired in May of 2014. Well, in preparing for this whole argument, I looked at those flights. Every one of them were booked well before 2014. One in 2011, one in 2012, one in 2013. And then he talked about his country club dues, like he was a big country club, spending all this money. But there's 60 pages in the exhibits that show that this guy was way behind. They kept wanting to throw him out because he wasn't paying his bills. Then he talked about the fact that she's spending money, so he has to know that she's money laundering. Well, the government admits in sentencing, the government admits in the Wallace case, that the guy made $900,000 in consulting fees during the same time period. And then when we talk about the money laundering count, we also have misstatements of the law constantly. We have money laundering by Lynn Wallace equals conspiracy. SUA funds are the same as fraud funds, are not distinguished. The legal theories, the presentation of the evidence, three days of testimony on Lynn Wallace's 12,500 transactions, none of which involved David Miller. The presentation of this case was the government was trying to do a do-over on the Lynn Wallace case because it was unable to forfeit his house. That's what motivated the government in this case. That's what this case was really about. I have 25 seconds left. I want to make one point, Your Honor. The misjoinder, if you believe that there was not a proper modus operandi, that these three things were not all the same. And we've gone through this in detail in the brief. If you agree with that, it also implicates the right to counsel, the Sixth Amendment right to counsel. And that's because the amount of loss to Skylink was $368,000. They froze $1.4 million. He could have paid for his attorneys otherwise. Thank you, Your Honor. Thank you very much, sir. If we were doing things the way we used to do it, we'd come down to Greek Council and shake your hands and tell you you did a good job. So I'll just tell you from here that you did a good job, and we're good to have you here. And, Madam Clerk, we're going to take a five-minute break, and then we'll reconvene for the next two cases. Thank you very much. This Honorable Court will take a brief recess.
judges: Robert B. King, James Andrew Wynn, Henry F. Floyd